Grant Kinsel, Bar No. 172407
gkinsel@perkinscoie.com
Joseph Hamilton, Bar No. 211544
jhamilton@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for NINTENDO OF
AMERICA INC., and NINTENDO
CO., LTD.

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| QUINTAL RESEARCH GROUP, INC. *Plaintiff*, v. NINTENDO OF AMERICA INC., and NINTENDO CO., LTD., *Defendants*. | Case No. 13-cv-0888 SBA **Reply in Support of Nintendo's Motion for Summary Judgment of Noninfringement** Date: Tuesday, November 5, 2013 Time: 1:00 pm Location: Courtroom 1, 4th floor |

TABLE OF CONTENTS

1. INTRODUCTION ..................................................................................................1
2. THE CLAIMS AND SPECIFICATION DEMONSTRATE THAT "SYMMETRICALLY ARRANGED" REQUIRES CORRESPONDENCE IN SIZE, SHAPE, AND POSITION .........................2
   A. Quintal fails to identify any intrinsic or extrinsic evidence supporting its location-only construction. .........................................2
      1. The unrelated and later-filed patents upon which Quintal relies are legally irrelevant and fail to support Quintal's construction. .............................................3
      2. The Wharton Declaration fails to establish that a person of ordinary skill would understand "symmetrically arranged" to refer only to location. ...............4
   B. Quintal's arguments against Nintendo's construction lack merit. ...........................................................................................5
      1. Nintendo's reliance on dictionaries as confirming the plain meaning of the claim language is appropriate. ............................................................5
      2. Nintendo's construction does not import a limitation. .................................................................7
      3. Nintendo is not judicially estopped from pursuing its claim construction position. ................................8
      4. Nintendo's construction is consistent with the disclosure of the '944 Patent. ..................................9
3. NINTENDO'S HANDHELD CONSOLES DO NOT INFRINGE CLAIMS 1 OR 9 UNDER EITHER PARTY'S CONSTRUCTION ............10
4. PROSECUTION HISTORY ESTOPPEL BARS QUINTAL'S APPLICATION OF THE DOCTRINE OF EQUIVALENTS .....................13
5. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*American Honda Motor Co., v. Coast Distribution Sys.*,
   609 F. Supp. 2d 1032 (N.D. Cal. 2009) .................................................................. 7

*American Piledriving Equip., Inc. v. Geoquip, Inc.*,
   637 F.3d 1324 (Fed. Cir. 2011) ............................................................................ 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
   344 F.3d 1359 (Fed. Cir. 2003) .......................................................................... 13

*Gen. Protecht Group v. Int'l Trade Comm'n*, 619 F.3d 1303 (Fed. Cir. 2010) .......... 4

*Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167 (Fed. Cir. 2004) ........................ 3

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) .................... 9

*Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329 (Fed. Cir. 2011) .................................. 8

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1369 (Fed. Cir. 1999) ........................... 13

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968 (Fed. Cir. 1999) ........... 5

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ................................................ 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................... 3, 4, 6, 8

*Schindler Elevator Corp. v. Otis Elevator Corp.*,
   593 F.3d 1275 (Fed. Cir. 2010) .......................................................................... 13

*Trilogy Com'ns, Inc. v. Times Fiber Com'ns, Inc.*, 109 F.3d 739 (Fed. Cir. 1997) .... 5

*Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312 (Fed. Cir. 2006) ................... 12

## 1.     INTRODUCTION

In its Opposition to Nintendo's Motion for Summary Judgment, Quintal concedes that the Gameboy Advance SP, Nintendo DSi, Nintendo DSi XL, and Nintendo 3DS do not infringe the '944 Patent. The Court should enter summary judgment of non-infringement for these devices.

Quintal also appears to recognize that under a proper construction of the symmetrically-arranged limitation, which requires correspondence in size, shape, and position on each side of a centerline, the remaining devices cannot infringe as a matter of law. So instead of disputing noninfringement, which Quintal cannot do, Quintal argues that Nintendo's construction is incorrect.

Quintal argues — without support in the claims, specification, or prosecution history — that a person of ordinary skill would have understood "symmetrically arranged" to require only "locational" symmetry. But the only evidence Quintal cites supporting its construction is a series of legally irrelevant patents and applications, and a single, conclusory statement from an "expert" declaration. In short, Quintal cannot identify any intrinsic support for its construction.

Even under Quintal's flawed construction, Nintendo's Handheld Consoles do not infringe claims 1 and 9. This is so because the claim language requires one thumb control on one side of the centerline to be symmetrically arranged with respect to a thumb control on the other side of the centerline. Even under Quintal's flawed construction, which requires only "locational" symmetry, Quintal cannot point to one thumb control on one side of the centerline that is symmetrical to a thumb control on the

other. Thus, Quintal's flawed construction does not preclude summary judgment of non-infringement.

## 2. THE CLAIMS AND SPECIFICATION DEMONSTRATE THAT "SYMMETRICALLY ARRANGED" REQUIRES CORRESPONDENCE IN SIZE, SHAPE, AND POSITION

Quintal argues that "symmetrically arranged" means "a positioning of parts having locational symmetry that is a balanced correspondence on each side of a dividing line."[1] But Quintal fails to show any support — intrinsic or extrinsic — for its construction.

### A. Quintal fails to identify any intrinsic or extrinsic evidence supporting its location-only construction.

Quintal asserts that the common meaning of "symmetrically arranged," as used by those of ordinary skill in the art, means "the location of the controls" only. Quintal further asserts that "[e]xamples of such usage are readily available."[2] Ironically, Quintal does not identify its '944 Patent as one of these readily-available examples. In fact, Quintal does not rely on the claims or specification of the '944 Patent *at all* in support of its construction. And that is to be expected: as Nintendo discussed in its Motion and as Quintal does not meaningfully dispute, the '944 Patent consistently and exclusively describes "symmetrically arranged" thumb controls as corresponding in size, shape, and position on each side of the centerline.[3] Quintal cannot and does not dispute this point, and this, alone, demonstrates the error of its construction.

---

[1] Quintal's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment ("Opp."), Dkt. # 49 at 2.

[2] Opp., Dkt. # 49 at 8.

[3] Nintendo's Motion for Summary Judgment of Noninfringement ("Motion"), Dkt. # 45-4 at 12-13.

### 1. The unrelated and later-filed patents upon which Quintal relies are legally irrelevant and fail to support Quintal's construction.

Because the intrinsic record does not support Quintal's construction, Quintal instead relies on four Nintendo patent applications filed in 2010 and 2011 as supposedly supporting Quintal's construction. According to Quintal, these applications establish that a person of ordinary skill would understand "symmetrically arranged" to require correspondence in location only.[4] Quintal's argument is flawed for many reasons.

First, Nintendo's applications are immaterial to the present claim construction dispute as a matter of law. The applications are unrelated to the '944 Patent and shed no light on the meaning of terms as used in the '944 Patent.[5] Moreover, given that the applications were filed more than nine years *after* the alleged priority date of the '944 Patent, they have no bearing on what a person of ordinary skill would have understood at the time of the invention.[6]

In addition to be being legally irrelevant, the Nintendo applications actually *support* Nintendo's proposed claim construction. The Nintendo applications disclose placing a *group* of buttons symmetrically with respect to another component.[7] By contrast, the '944 Patent does not claim a *group*

---

[4]   Opp., Dkt. # 49 at 9.

[5]   *See, e.g., Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167–68 (Fed. Cir. 2004) (statements in another patent or its prosecution history are irrelevant to claim construction "[a]bsent a formal relationship or incorporation during prosecution" of the patent at issue).

[6]   *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

[7]   App. No. 13/049,581, Dkt. # 50-3 at ¶ [0078] (four buttons are "bilaterally symmetrical *in position*" with respect to analog stick); App. No. 13/153,784, Dkt. # 52-7 at ¶ [0094] (same); App. No. 13/238,535, Dkt. # 50-4 at ¶ [0095] (four buttons and analog stick are "*positioned* so as to be symmetrical"); App. No. 12/980,620, Dkt. #50-5 at ¶ [0087] (four buttons and analog stick are "*placed* symmetrically to each other").

*of* symmetrically arranged buttons or controls. Instead, the '944 Patent claims *two thumb controls* that are "symmetrically arranged" with each other. As the specification repeatedly makes clear, these two thumb controls correspond in size, shape, and position on each side of a centerline.[8]



Quintal cites to two other patents — also unrelated to the '944 Patent — that were filed in 1990 and 1991.[9] Putting aside the irrelevance of the patents, they do not support Quintal's position. The portions of the cited Nintendo patent, U.S. Pat. No. 5,207,426, do not discuss the term "symmetrically" at all. And U.S. Pat. No. 5,137,277 to Konami discloses buttons that correspondence in size, shape, and position as shown to the right.

  **2. The Wharton Declaration fails to establish that a person of ordinary skill would understand "symmetrically arranged" to refer only to location.**

Quintal's only other "evidence" supposedly supporting its construction is the declaration of John Wharton. Wharton's declaration is conclusory, contrary to the intrinsic evidence, and should be disregarded. As the Federal Circuit has said, "an expert's subjective understanding of a patent term is irrelevant."[10] Further, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."[11] The Federal Circuit has also held that it is proper to exclude proposed expert

---

[8] Motion, Dkt. # 45-4 at 12-13 (citing '944 Patent at 6:20-22, 6:24-26, 6:43-55, Figs. 19A, 20).

[9] Opp., Dkt. # 49 at 8-10.

[10] *Gen. Protecht Group v. Int'l Trade Comm'n*, 619 F.3d 1303, 1310 (Fed. Cir. 2010))

[11] *Phillips*, 415 F.3d at 1318.

testimony, where, as here, "the patent specification and the prosecution history adequately elucidate the proper meaning of the claims."[12] Simply put, expert testimony cannot be used — as Quintal attempts here — to vary or contradict the intrinsic evidence.[13]

Wharton's declaration should be disregarded because it is, at best, rank conclusion unsupported by facts. For instance, Wharton's declaration fails to address the '944 Patent's claim language, specification, or prosecution history.[14] Indeed, Mr. Wharton's conclusory statement that "[t]here is no value in having 'mirror image' symmetry of individual buttons such that they are symmetrical in size, shape, and location"[15] is directly contradicted by the '944 Patent itself, as the only embodiment in the '944 Patent shows symmetrically arranged buttons corresponding in size, shape, and position on opposite sides of the display screen.

**B.     Quintal's arguments against Nintendo's construction lack merit.**

Having failed to establish any affirmative basis for its own construction, Quintal attacks Nintendo's construction on a number of fronts. Each of Quintal's arguments lacks merit.

**1.     Nintendo's reliance on dictionaries as confirming the plain meaning of the claim language is appropriate.**

Quintal's criticism of Nintendo's reliance on dictionaries from the time of the invention as the "sole basis" for Nintendo's construction is misguided. Nintendo's construction is supported by the '944 Patent, which

---

[12]   *Trilogy Com'ns, Inc. v. Times Fiber Com'ns, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997).

[13]   *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971 (Fed. Cir. 1999).

[14]   Nintendo hereby moves to strike Mr. Wharton's declaration.

[15]   Wharton Decl., Dkt. # 49-1 at 15.

consistently and exclusively discloses that "symmetrically arranged" buttons correspond in size, shape, and position.[16] The cited definitions demonstrate that the use in the specification is consistent with the terms' common, ordinary meanings.

And, in fact, this is precisely how the Federal Circuit in *Phillips* suggested that general purpose dictionaries should be used: To confirm the ordinary meaning of claim language where, as here, construing the terms "involves little more than the application of the widely accepted meaning of commonly understood words."[17]

Quintal also argues that Nintendo "cherry-picked" its definitions.[18] But Nintendo has identified *seven* distinct dictionaries from the relevant time period. All of these dictionaries indicate that the plain meaning of "symmetrically arranged" incorporates correspondence in size, shape, and position on each side of a dividing line — exactly as the specification does.

Even Quintal's dictionaries support Nintendo's construction. Quintal's first dictionary definition is "capable of division by a longitudinal plane into similar halves."[19] "Similar halves" means correspondence in size, shape, and position, not just position. And while Quintal's second definition, "having the same number of members in each whorl of floral leaves," might be helpful in the context of flowers, that definition is not relevant in understanding how one skilled in the art of the '944 Patent would understand the symmetrically-arranged limitation.

---

[16] Motion, Dkt. # 45-4 at 12-14.
[17] *Phillips*, 415 F.3d at 1314.
[18] Opp., Dkt. # 49 at 14.
[19] Opp., Dkt. # 49 at 14.

Finally, Quintal alleges that Nintendo misinterpreted *American Honda Motor Co. v. Coast Distribution Sys.* Nintendo cited this case as an example of this Court recognizing that the plain meaning of the claim term "symmetrically" encompasses size and shape, not just position. And that is exactly what happened. In *American Honda*, the parties' dispute centered around the use of the term "symmetrically disposed" in the context of a longer limitation.[20] The Court recognized that the plain meaning of "symmetry" "encompasses both placement and size."[21] The Court recognized that the specification in that case departed from the common, ordinary meaning to refer only to placement. By contrast, in this case, nothing in the specification suggests that the symmetrically-arranged limitation carries anything other than its plain, ordinary meaning as recognized by the *American Honda* court. Thus, *American Honda* is fully consistent with Nintendo's construction.

**2.  Nintendo's construction does not import a limitation.**

Quintal next argues that Nintendo is trying to limit the scope of the claims to the embodiment depicted in Figure 19A.[22] This is also incorrect.

As Quintal acknowledges, Figure 19A depicts the "symmetrical arrangement" of the claimed thumb controls 166.[23] Figure 19A is, therefore, highly relevant for purposes of confirming the meaning of "thumb controls [that] are symmetrically arranged" in the claims. Figure 19A confirms that

---

[20]  609 F. Supp. 2d 1032, 1040 (N.D. Cal. 2009).
[21]  *Id.* at 1041.
[22]  Opp., Dkt. # 49 at 14-15.
[23]  Opp., Dkt. # 49 at 4.

the patentee used "symmetrically arranged" consistently with its common, ordinary meaning as describing a mirror-image arrangement.

As the Federal Circuit held in *Phillips,* claim construction should be conducted using the specification as a guide: "[t]he person of ordinary skill in the art is deemed to read the claim term not only in the context of a particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."[24] Case law is rife with examples of terms being construed in line with the consistent disclosure of the specification.[25] This is not importing a limitation — it is construing terms in light of the specification, as required by the Federal Circuit.

### 3. Nintendo is not judicially estopped from pursuing its claim construction position.

Quintal argues that Nintendo should be "judicially estopped" from pursuing its claim construction in view of the disclosure of Nintendo's 2010 and 2011 patents. This is factually and legally wrong.

In considering whether to apply the equitable doctrine of judicial estoppel, courts typically look to several factors: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether "the party has succeeded in persuading a court to accept that party's earlier position"; and (3) whether the party asserting the position would "impose an unfair detriment on the opposing party if not estopped."[26]

---

[24]   *Phillips*, 415 F.3d at 1315.
[25]   *E.g., id.; American Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1333 (Fed. Cir. 2011); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1338 (Fed. Cir. 2011).
[26]   *New Hampshire v. Maine*, 532 U.S. 742, 750, 751 (2001).

None of these factors are met in the present case. First, as discussed above in Sec. 2(A)(2), Nintendo's patents are *consistent* with Nintendo's proposed construction for "symmetrically arranged." Second, Nintendo took no "position" before the Patent Office with respect to the specifications; a statement in a specification is not a position upon which the Patent Office "relies" or "accepts" in any way.[27] And Third, Quintal has not — because it cannot — provide evidence that it has been at all prejudiced by statements made in the applications.

### 4.   Nintendo's construction is consistent with the disclosure of the '944 Patent.

Quintal raises various arguments generally alleging that Nintendo's construction is at odds with the disclosure of the '944 Patent. For example, Quintal argues that Nintendo's construction relates to "symmetrically" only, vitiating the "arranged" portion.[28] But as Quintal's own proposed definition of "arranged" demonstrates, "arranged" means the "relationship" between the two thumb controls.[29] "Symmetrically," indicates *how* the claimed two thumb controls are related.

Next, Quintal argues that the '944 Patent relates to "an ergonomic function," not "mathematical precision."[30] In other words, Quintal argues that so long as the buttons are ergonomic, then they need not be "symmetrically arranged." But, the claims expressly require "ergonomic

---

[27]   *See, e.g., Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position.").

[28]   Opp., Dkt. # 49 at 1, 2.

[29]   Opp., Dkt. # 49 at 14.

[30]   Opp., Dkt. # 49 at 7-8.

manual controls" that are "symmetrically arranged." Ergonomic is a separate requirement for the controls; being ergonomic does not satisfy the symmetrically-arranged limitation.[31]

Quintal also argues that the '944 Patent claims 1 and 9 require only a single "cursor control" and therefore it is "unlikely" that "symmetrically arranged" includes correspondence in size and shape.[32] But under Quintal's own proposed definition, "cursor control" refers to the control's function of controlling a cursor, not the control's size or shape.[33] Similarly, referring to the cursor controls, the '944 Patent states that "[o]ther uses of the tandem control system will become apparent."[34] Thus, contrary to Quintal's assertion, it is consistent for the claims to require (1) two finger and two thumb controls that correspond in size, shape, and position, and (2) that only one of the those controls is used to control a cursor.

### 3. NINTENDO'S HANDHELD CONSOLES DO NOT INFRINGE CLAIMS 1 OR 9 UNDER EITHER PARTY'S CONSTRUCTION

Quintal does not dispute—and therefore concedes—that the Nintendo Handheld Consoles do not infringe claims 1 and 9 under Nintendo's proposed construction of "symmetrically arranged." Thus, if the Court construes the symmetrically-arranged limitation as Nintendo has proposed, then summary judgment follows as a matter of law.

---

[31] Quintal's reliance on case law relating to indefiniteness as supporting its "ergonomic" argument is inapposite. It is true that "ergonomic" might be indefinite, as that term is purely functional: how easy to use does the device have to be before it is considered "ergonomic"? "Symmetrically arranged," however, is not such a term.

[32] Opp., Dkt. # 49 at 4-5.

[33] Opp., Dkt. # 49 at n. 2 ("Cursor control keys are '[t]he keyboard keys used to position a cursor on the display screen.") (citation omitted).

[34] '944 Patent at 6:35–36.

But even under Quintal's proposed construction, summary judgment of non-infringement is appropriate. Quintal asserts that the cross-shaped button on the left side of each of Nintendo's consoles is "symmetrically arranged" with the group of two or four buttons on the right side of the consoles, which Quintal refers to as a "cluster of controls."[35] But the claims require "two spaced thumb controls mounted on the front of the pocket-size unit. . . . wherein the . . . two spaced thumb controls are symmetrically arranged on each side of the display screen." The claims do not relate to symmetrically arranged "groups" or "clusters" of controls. Thus, to meet this limitation, Quintal must identify at least *one* thumb control on the left side of the console that is "symmetrically arranged" with at least *one* thumb control on the right side. Quintal has not — and cannot — do that under any construction of "symmetrically arranged."

Quintal concedes that Gameboy Advance SP does not infringe. This leaves only two Gameboy Devices — the Gameboy Advance and the Gameboy Micro.[36] For these devices, Quintal argues that the cross-shaped button on the left side of the screen is "symmetrically arranged" with the group of two A and B buttons on the right.[37] This exposes the illogic of Quintal's position: is the cross-shaped button "symmetrically arranged" with respect to the A button or the B button? A single button — here, the cross-shaped button — cannot have the same "location relative to a centerline" as two separate buttons. Further, the cross-shaped button is not

---

[35] Opp., Dkt. # 49 at 19.
[36] Quintal concedes that the Gameboy Advance SP does not infringe claims 1 and 9. Opp., Dkt. # 49 at 9, n. 3.
[37] Opp., Dkt. # 49 at 19.

the same distance away from the centerline as either the A or B buttons, and Quintal does not contend otherwise. Thus, even under Quintal's flawed construction, the Gameboy Devices cannot meet the symmetrically-arranged limitation.

Quintal makes a similar argument for the remaining Nintendo DS Devices, the Nintendo DS and DS Lite.[38] For these consoles, Quintal argues that the cross shaped button on the left side of the screen is "symmetrically arranged" with the "cluster of [A, B, X, and Y] buttons" on the right side.[39] Again, the single cross-shaped button on the right side of the Nintendo DS Devices cannot have the same location relative to the centerline as any one of the A, B, X, or Y buttons. The Nintendo DS Devices, therefore, do not meet the symmetrically-arranged limitation even under Quintal's construction.

Finally, Quintal's own expert admits that the Nintendo consoles are designed for "ease of use, not mathematical symmetry."[40] But the claims require thumb controls that are "symmetrically arranged," not simply controls that are easy to use. Quintal's expert's conclusory statements, to the extent admissible, support Nintendo not Quintal.[41]

---

[38] Quintal does not contest Nintendo's argument that the Nintendo DSiXL and 3DS fail to meet the "symmetrically arranged" limitations of claims 1 and 9. Opp., Dkt. # 49 at 20, n. 9. Quintal's Opposition fails to address the Nintendo DSi altogether. Quintal has therefore waived any arguments of infringement with respect to these three consoles.

[39] Opp., Dkt. # 49 at 20.

[40] Wharton Decl., Dkt. # 49-1 at ¶ 16.

[41] See, e.g., *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006).

### 4. PROSECUTION HISTORY ESTOPPEL BARS QUINTAL'S APPLICATION OF THE DOCTRINE OF EQUIVALENTS

Finally, Quintal takes issue with Nintendo's application of the doctrine of prosecution history estoppel to limit application of the doctrine of equivalents with respect to the symmetrically-arranged limitation.

Quintal first argues that when the examiner, with the applicants permission, added the narrowing symmetrically-arranged limitation to the claims during prosecution, the addition was not in response to any particular prior art reference.[42] This is irrelevant as a matter of law. For prosecution history estoppel to apply, the narrowing amendment need not be made in response to a particular reference — it must only be made in order to secure allowance.[43] The examiner amended the claims to add the symmetrically-arranged limitation.[44] The Applicant authorized the narrowing amendment in advance,[45] and expressly confirmed the examiner's reason for allowance.[46] Given that the amendment added the limitation that the two finger and thumb controls each be "symmetrically arranged," it was necessarily narrowing.[47]

---

[42] Opp., Dkt. # 49 at 17.

[43] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1369-70 (Fed. Cir. 1999).

[44] '944 Patent File History, 2008-6-17 Notice of Allowance, Dkt. # 45-7 at 2.

[45] *Id.* ("Authorization for this examiner's amendment was given in a telephone interview with Mr. Peterson Richard on June 5, 2008.").

[46] 2008-8-4 Amendment, Dkt # 52-2 at 5–6.

[47] *See, e.g., Schindler Elevator Corp. v. Otis Elevator Corp.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) ("an amendment that clearly narrows the scope of a claim, such as by the addition of a new claim limitation, constitutes a disclaimer of any claim interpretation that would effectively eliminate the limitation or that would otherwise recapture the claim's original scope").

Quintal's argument that Nintendo "fails to address the scope of the subject matter surrendered by the alleged narrowing amendment" is also misplaced.[48] The amendment added the symmetrically-arranged limitation.[49] So, Quintal is now estopped from asserting infringement of that limitation under the doctrine of equivalents.[50]

Quintal's argument under the doctrine of equivalents also fails because Quintal has not demonstrated equivalence. Quintal invokes the *Warner-Jenkinson* "function, way, result" test and alleges that the buttons on the Nintendo Handheld Consoles perform the same function of "data input or game playing via button depressing" as the claimed symmetrically-arranged thumb controls.[51] But this function has nothing to do with the limitation at issue: Any "two spaced thumb controls" would perform Quintal's proposed function no matter how the buttons are arranged, writing "symmetrically" out of the claim.

Further, Quintal does not identify the "way" or the "result" prongs of the test, let alone explain how the buttons on Nintendo's consoles meet the "way" and "result" prongs of the test.[52] Thus, even if Quintal was not barred from asserting infringement under the doctrine of equivalents—it is, Quintal has failed to establish two of the three prongs of the test for infringement under the doctrine of equivalents.

---

[48]   Opp., Dkt. # 49 at 22.

[49]   '944 Patent File History, 2008-6-17 Notice of Allowance, Dkt. # 45-7 at 2.

[50]   *Festo Corp.*, 344 F.3d at 1366.

[51]   Opp., Dkt. # 49 at 23.

[52]   Quintal's expert also simply concludes that Nintendo meets the test without any explanation. Wharton Decl., Dkt. # 49-1 at ¶ 21. Again, this conclusory testimony should be accorded no weight.

**5.    CONCLUSION**

Nintendo submits that there is no genuine issue of material fact regarding whether the Nintendo Handheld Devices meet the symmetrically arranged-limitation of claims 1 and 9 of the '944 Patent. Because the Nintendo Handheld Devices do not meet the symmetrically arranged-limitation under either party's construction, Nintendo respectfully requests that the Court enter summary judgment of noninfringement on all claims of the '944 Patent.

October 22, 2013                            PERKINS COIE LLP


                                            By:    /s/ *Grant Kinsel*
                                               Grant Kinsel, Bar. No. 172407

                                            Attorneys for NINTENDO OF AMERICA
                                            INC., AND NINTENDO CO., LTD.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document, Nintendo of America Inc. and Nintendo Co., Ltd.'s Motion for Summary Judgment of Noninfringement, was served on October 22, 2013 on all counsel who have consented to electronic service.

/s/ *Grant Kinsel*